Shiras v. Olinger.

| 50 | 571 |
| 131 | 661 |

| 50 | 571 |
| e134 | 745 |

| 50 | 571 |
| 140 | 434 |

## SHIRAS v. OLINGER ET AL.

1. **Nuisance**: LIVERY STABLE. While a livery stable is not necessarily a
nuisance, yet it may be so declared if it is built in close proximity to
existing residences, and becomes seriously detrimental to the health
and comfort of the occupants.

2. ——: ——: INJUNCTION. Where a livery stable had been burned
down it was *held* that injunction would not lie to prevent its being
rebuilt, since it might be so modified as not necessarily to become a
nuisance.

*Appeal from Dubuque Circuit Court.*

WEDNESDAY, APRIL 23.

THE defendants, on the 17th day of September, 1878, owned
and occupied a certain building in the city of Dubuque as a
livery stable, being upon the north-west corner of Clay and
Eleventh streets, fronting upon Clay and extending westward
to an alley. The plaintiff is the owner of the lot next west,
fronting upon Iowa street, and extending eastward to the

alley.   Upon this lot is situated his residence, which he has owned and occupied from a time antecedent to the occupation of the defendants' premises for a livery stable.   On the 17th day of September, 1878, a part of the livery stable was consumed by fire, by reason whereof the premises ceased to be used for a livery stable, and the use had not been resumed at the time of the commencement of this action, but the defendants were about to rebuild and resume such use.

The plaintiff avers that the occupation of the premises for a livery stable has been a nuisance, and asks that it be so decreed, and that the defendants be restrained by injunction from such use, and from rebuilding.   The court rendered a decree enjoining the use, but not the rebuilding.   The defendants appeal.

*Fouke & Lyon*, for appellants.

*Shiras, VanDuzee & Henderson*, for appellee.

ADAMS, J.—Two questions are presented in this case. The *first* is as to whether the premises as used have been a nuisance; and, *second*, whether, the use having ceased, an injunction will lie to prevent its being resumed.

I.   A livery stable in a city is not necessarily a nuisance, but may be so under some circumstances.   *Burditt v. Swenson*, 17 Texas, 489; *Dargan v. Waddell*, 11 Humphreys, 406; *Coker v. Berge*, 10 Ga., 366; *Aldrich v. Howard*, 8 R. I., 246.   It may doubtless be declared a nuisance if it is built in close proximity to existing residences, and becomes seriously detrimental to the health and comfort of the occupants.   In the case at bar the original stable abutted upon the alley, with two doors opening upon it, and within forty feet of the east wall of the plaintiff's house.   The stable, if rebuilt as proposed, will occupy the same place, and open upon the alley in the same way.   The original alley doors were used for the removal of offal.   The alley doors in the rebuilt stable are to be used for the same

1. NUISANCE: livery stable.

purpose, necessitating the use of the alley as a temporary place of deposit.

The testimony of members of the plaintiff's family and of other persons living in the immediate vicinity was taken in regard to the odors emanating from the stable. It is not entirely uniform; but in regard to the plaintiff's house it is clearly established that offensive odors were almost constantly perceived within it, and that sometimes they were such as to render it necessary to keep the doors and windows closed upon the east and south sides. Expert evidence was introduced to the effect that while it is not clearly established that gases from a livery stable generate any specific disease, they are regarded by the medical profession as noxious if allowed to permeate residences, increasing exposure to disease, especially in case of epidemics, and constituting generally in disease an aggravating element. Evidence was also introduced showing that sickness in the plaintiff's family and other families near the stable had probably occurred or been aggravated by gases from the stable. On the other hand there was medical evidence tending to show that it has not been observed that persons employed in a livery stable are more subject to disease than others.

We conclude from the evidence that whatever deleteriousness there may be in gases from a livery stable, it is not of a very marked character; that persons of out-of-door habits may perhaps be exposed to them with impunity, especially in the absence of any epidemic; but that a residence very greatly permeated by them must be regarded as unwholesome, and to some persons, under some circumstances, likely to prove dangerous.

We are aware of the necessity of livery stables in cities, and of the difficulty of locating them so far from where persons reside that no one shall feel annoyed by their proximity. They are supposed to depreciate the value of residence property to a much greater distance than the gases can be harmful or possibly penetrate. In the disposition which exists to

make war upon them there is great danger that injustice will be done to their proprietors if they can readily be declared a nuisance. We have accordingly hesitated in coming to the conclusion which we have reached that the use of the defendants' premises for a livery stable was a nuisance. In so doing it is proper that we should say that the objection to the stable, in our mind, arises largely from the construction of the doors upon the alley so near the plaintiff's residence, the removal of the offal through those doors, and the use of the alley, under the circumstances, as a temporary place of deposit.

II. It is urged, however, that the use of the premises for a livery stable having ceased, an injunction will not lie to 2. ——: ——: prevent its being resumed. Our attention is
injunction. called to the case of the *Earl of Ripon v. Hobart,* 3 Mylne & Keene, 177. Lord Chancellor Brougham said that "no instance can be produced of the interposition by injunction in case of an eventual or contingent nuisance." It was held, too, in *Flint v. Russell,* a recent case in the Circuit Court of the United States for the eastern district of Missouri, that the keeping of a livery stable in a city, not being necessarily a nuisance, no injunction would lie against it in advance. The reason given is that it cannot be determined in advance that it would prove to be a nuisance. This case differs from that in the fact that the effect of the proposed use has been practically demonstrated. It is possible that the premises might be so used as not to be a nuisance. It would indeed be evident that they could, if the fault had been in the mode of keeping them. But the evidence shows that they were well kept. Upon this point a witness testified as follows:

"I have been in the stable almost every day since Olinger kept it; the condition of the stable was first-class; there were not any more smells or stenches ensuing from it than from any of them."

Other witnesses testified substantially to the same effect.

This testimony is undisputed. It may be taken, then, as established that the nuisance has resulted from the location and structure of the building, and mode of using it, rather than from any negligence in keeping it. Unless some change can be introduced more radical than would pertain to mere care in keeping it, the use, if resumed as proposed, would, we think, be a nuisance. But, inasmuch as a livery stable is not a nuisance *per se*, and it is not impossible that a change may be introduced which would obviate all objections, we think that the decree enjoining the use absolutely went too far, and should be so modified as simply to enjoin such use as we have found would be a nuisance, to-wit: all use that would be substantially like the use heretofore made of the premises. If we should go further than that it appears to us that we should be determining in advance of any practical demonstration what would be a nuisance, and that in so doing we should contravene well-recognized legal principles. If a use essentially different should be adopted a new question would arise to be determined upon its own merits.

MODIFIED AND AFFIRMED.