**LEWIS v. BERNEY et al.   (No. 6539.)**

(Court of Civil Appeals of Texas.   San Antonio.   April 6, 1921.   Rehearing Denied April 30, 1921.)

**1. Nuisance ⬤⟳3(11)—Garage in residential district enjoined.**

The construction and operation of a garage in a section of the city in which such a business has never been carried on, and which has been used exclusively for residential purposes, where the establishment and operation of the garage will seriously injure the health of the residents, impair the value of their properties, increase the fire risk of such properties, and render the vicinity undesirable as a residential district, will be enjoined.

**2. Appeal and error ⬤⟳850(1)—Issues raised by testimony resolved in support of judgment in absence of specific findings.**

In the absence of specific findings of fact, every issue raised by the testimony must be resolved in support of the judgment.

**3. Nuisance ⬤⟳3(11)—Garage not a nuisance per se.**

A garage is not a nuisance per se, but may become one when established and operated in a strictly residential section.

Appeal from District Court, Tarrant County; Bruce Young, Judge.

Action by C. W. Berney and others against Hugh H. Lewis. Judgment for plaintiffs, and defendant appeals. Affirmed.

Wray & Mayer, of Fort Worth, for appellant.

Flournoy & Smith, of Fort Worth, for appellees.

SMITH, J. This is an appeal from a permanent injunction granted at the instance of C. W. Berney and others restraining Hugh H. Lewis from constructing and operating a public automobile storage garage, filling station, and repair shop at the corner of Sixth avenue and Pruitt street in the city of Fort Worth. The matter was tried before the court without a jury. No findings of fact or conclusions of law were requested of or filed by the court, but the judgment appealed from embraced the following:

"The court, having fully heard the testimony and the argument of counsel, is of the opinion that the business and operations of the defendant sought to be enjoined by plaintiffs herein will unlawfully annoy, harass, offend, and injure the plaintiffs in their homes as adjacent and near the said proposed business and operations of defendant, and that said business and operations will be a nuisance to plaintiffs residing in their said homes and should be enjoined."

The first assignment of error complains of the action of the lower court in overruling the general demurrer urged by Lewis, defendant below and appellant here. Appellees in the court below alleged that Lewis had bought a 75x140-foot lot at the location mentioned and was preparing to construct and operate a public warehouse and storage garage, filling station, and repair shop covering the entire lot; that the lot was located in the heart of a purely residential section of the city, and in the immediate neighborhood of the homes of appellees, and particularly within a few feet of the home of one of the appellees; that the outfit was to be operated both day and night, including Sundays, for storing, repairing, and filling automobiles and motor-driven vehicles using gasoline and kerosene; and that the storage capacity of the plant was from 80 to 90 cars. After further alleging that Lewis had begun to move material onto the lot for such construction, the petition proceeded:

"Plaintiffs allege further that the aforesaid uses of such building will produce great and continued noises necessarily connected with the operation and moving of considerable numbers of motor-driven vehicles as aforesaid and the carrying on of the business of repairs for same, during all hours of the day and night and on Sundays, and that said uses will produce also obnoxious fumes and odors, and noxious vapors and smoke from the fuel and materials employed and consumed in the moving of the said cars and repairs of same and the operations of the business in said building, and will greatly increase the fire risk to houses adjacent thereto; that the said uses of said building will necessarily produce an accumulation and congestion of cars on the streets on which said building will abut and along the sidewalk curbs adjacent to said building and for a considerable distance beyond said building, both on Pruitt street and Sixth avenue; that Sixth avenue is the main and principal thoroughfare for vehicles traveling from Pennsylvania avenue south for the whole district extending west from South Main street to the river bluff on the east, and being a narrow street, only 50 feet, including the sidewalks, is now, particularly in the afternoon when persons are accustomed to drive for pleasure, loaded with vehicle traffic to its full capacity; Pruitt street, lying immediately south of said premises, is only 60 feet wide and is also much used therefor; that all of the consequences and conditions hereinabove set out will be continuous from and after the time when the said building is occupied and employed for the uses aforesaid.

"Plaintiffs allege that they are all owners of and occupy homesteads for dwelling purposes in the immediate vicinity of the defendant's said premises; that the said locality and the district for many blocks around has been for 30 years or more a desirable and favored residence section of the city of Fort Worth, and that plaintiffs selected the same and acquired their said homes there for that reason; that there is no factory, shop, industry, or business plant of any character within a long distance of said locality; that the intrusion of the defendant thereon for the purpose aforesaid is a wanton, willful deprivation of plaintiffs' legal rights to the peaceful and unimpaired enjoyment of their said homes; that immediately

⬤⟳For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

upon learning of defendant's said purpose plaintiffs, in a body together with other residents of said neighborhood, protested to the defendant against the same, and have continuously petitioned and remonstrated with the defendant against his carrying out his said plans, and have offered, in good faith, to defendant a price for his said premises greatly in excess of the price paid by him, or contracted to be paid by him, for the said premises, to induce defendant to abandon the said plans, but in face of these conditions the defendant has persevered in his said purpose of erecting the building on his said premises, and carrying on the obnoxious and destructive nuisance aforesaid, and will do so to the irreparable loss and damage and injury to the plaintiffs, and all of them, unless prevented by the court from so doing.

"Plaintiffs allege further that their properties, lands, and improvements in the immediate vicinity of said proposed building and business of said defendant as aforesaid range in value in the several instances from $60,000 to $80,-000; that the home of plaintiff C. W. Berney, adjacent to defendant's said premises on the west, will be but a few feet distant from the said building of the defendant, if erected; that said home is of the present value of $20,000 and is now occupied, and has been for 13 years occupied by said C. W. Berney, his two unmarried sisters, and mother, now 77 years old, composing his family; that his mother is an invalid as a result of nervous troubles, and that the quiet and peaceful conditions which ordinarily prevail in said residence quarters as it now exists are absolutely essential to the said members of the family of the said C. W. Berney; that plaintiff A. B. Case is an invalid confined to his house as a result of a disease of the nervous system; that J. E. McCauley is a helpless invalid confined to the house and unable to support the injurious influences of defendant's business; that plaintiff Norine M. Gough is the owner of the premises directly across Pruitt street from defendant's said premises, the same being the only property owned by said plaintiff, and that her sole means of subsistence is the rent of rooms in her dwelling on said premises, the desirability of which for said purposes will be destroyed by the said business of defendant; that each and all of the plaintiffs, and the members of their families, will be harassed, inconvenienced, and injuriously affected in health, disturbed and offended by the said business of the defendant; that the said neighborhood will be made dangerous by the defendant's said uses for many children, members of the families of various plaintiffs aforesaid. Plaintiffs allege further that the value of their several properties will be depreciated thereby in a sum amounting to many thousands of dollars for which the said defendant is wholly incapable of responding in damages."

[1] These allegations state a cause of action. The averments show the peculiar character of the business invading a section of the city where no such business now exists, or has ever existed, and which is given over exclusively to residential purposes; that the establishment and operation of the business will seriously injure the health of the residents of the vicinity, impair the values of their properties, increase the fire risk of such properties, and render the vicinity undesirable for the purpose for which it is now and has always been most desirable—a place where families may live in health, peace, quiet, and safety. These allegations, we say, state a cause of action. The first assignment is overruled.

[2] The remaining assignments of error complain that the judgment of the lower court is without evidence to support it, and many propositions are advanced in fortification of the assignments. But these assignments are overruled. The pleadings above set out are abundantly supported in every essential by the evidence, and every issue raised by this testimony must be resolved in support of the judgment, in the absence of specific findings of fact. Moreover, we affirmatively approve of the judgment. We do not think any other could have been properly rendered.

The appellees were neighbors residing, along with many other families, in the well-settled neighborhood in the midst of which appellant sought to locate his garage. These were quiet people, of obvious refinement, who selected this vicinity in which to build their homes and live and have their being, and raise their families in healthy, restful, safe surroundings. Some of them have resided there for as long as 30 years. They all owned their own homes. Some of them sought the location for the very reason that, being in ill health, they would be far removed from the smoke and dust and strident noises and noxious vapors incident to the business and industrial sections of the city and the location suited their purposes. They were entitled to be protected by law from nuisances.

[3] A plant of the character sought to be constructed and operated by appellant is not a nuisance per se. If lawfully operated in a neighborhood substantially given over to similar businesses, or to other industrial concerns, it would not in any event, perhaps, constitute a nuisance. A livery stable, in its day, was a lawful business, and did not constitute a nuisance per se. But when established and operated in a strictly residential section it became a nuisance and, upon complaint of the residents, the courts did not hesitate to restrain the owners from operating them. As an institution, the livery stable has disappeared. It has been superseded by the automobile garage, as the horse has been superseded by the motor-propelled vehicle. The objections once made to the livery stable are not in detail like the objections to the garage. But they are just as reasonable and forceful. These are matters of common knowledge.

We think the trial court was correct in his findings and in his judgment, which is affirmed. Jung v. Neraz, 71 Tex. 398, 9 S. W. 344; Moore v. Coleman, 185 S. W. 936; Jacobs & Wright v. Brigham, 227 S. W. 249;

Hockaday v. Wortham, 22 Tex. Civ. App. 419, 54 S. W. 1094; Waters-Pierce Co. v. Cook, 26 S. W. 97, 6 Tex. Civ. App. 573.

Affirmed.

---

⊕=For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes