JOHN PAULY, Appellant, v. WILLIAM J. MONTGOMERY et al., Appellees.

No. 39819.

JANUARY 21, 1930.

*N. Rosenberger* and *C. J. Rosenberger,* for appellant.

*Drake & Wilson,* for appellees.

ALBERT, J.—Park Avenue in the city of Muscatine runs north and south, and is intersected by Madison Street, running east and west. At the southwest corner of this intersection is  Lot 6, on which the garage in controversy was constructed by the defendant William J. Montgomery. Plaintiff, John Pauly, owns Lot 7, immediately west, abutting on Madison Street, of which lot he became possessed in 1901, and

on which he constructed a dwelling house, where he and his family have ever since lived. He originally owned Lot 6, but later disposed of the same, and his grantee conveyed the same to Montgomery about 1923. It was then a vacant lot. Montgomery established an oil station near the northeast corner of said lot, and constructed a small building as a part thereof, in which he handled accessories and supplies. Later, the defendant erected three additions to this building as originally constructed, adding a repair department, the last of these additions being made after this lawsuit was commenced. It was about 30 feet square. The garage was so constructed that the west line thereof was within 3.8 feet from the lot line, and the plaintiff's house was about 24 feet west of the lot line.

Plaintiff's claim is that, after the construction of the oil station, the defendant established a garage and general repair business in the additions on said building, and that thereby defendants made a great deal of noise, like pounding and hammering in and about said building, running of gasoline engines and motor cars, and opening and closing of large doors, and that said noise was continuous and unreasonable, during the day and at unseemly hours of the night, including Sundays; that frequently the defendant placed automobiles along the west line of said Lot 6, and allowed the engines to run idly for several hours at a time, thereby causing carbon monoxide and carbon dioxide gases to escape from the exhausts of the cars, to penetrate plaintiff's premises, causing great physical discomfort to plaintiff and his family, and being very injurious to their health; that the defendant turned water out of the building onto the north side of the lot, where there was a depression, where said water stagnated or evaporated, making an unhealthy condition, which materially impaired the health and comfort of plaintiff and his family; that the defendant heated the garage with stoves, but had no chimneys thereon, carrying the smoke through the roof by means of stovepipes; that poisonous gases and clouds of black smoke were sometimes emitted from the stovepipe on said building, which blew over and onto and through plaintiff's premises, through the doors and windows of his dwelling and through the rooms thereof, causing much dirt and soot therein, causing plaintiff and his family much physical discomfort, all of which materially interfered

with and destroyed the peace and comfort of his home; that automobile horns were sounded, and there was much pounding of metal, tires were removed and replaced, engines were tested at various rates of speed, their mufflers oftentimes cut out, an air-compressing pump was often operated, batteries were charged and repaired, all of which caused much loud, disagreeable, and unreasonable noise, which was carried to plaintiff's premises and through his home; that oil, grease, and water collected in and about the garage; that smoke and gases were emitted from the exhausts of running automobiles in and about said garage; that offensive, disagreeable, and noxious odors and poisonous gases therefrom were carried to plaintiff's premises and through his home; that thereby the plaintiff and his family were caused much physical and mental pain and discomfort, which materially interfered with, disturbed, and destroyed their peaceful and comfortable enjoyment of their home, and were such as would cause much physical and mental pain and discomfort to, and interfere with, disturb, and destroy, the peaceful and comfortable enjoyment of a reasonable person of ordinary sensibilities, situated as plaintiff was situated in relation to said garage.

Generally, the defendant denies, and alleges that there are no continuous or disagreeable noises caused by the operation of said business, and that said business is conducted in a careful and prudent manner, with due regard at all times to the convenience and rights of all persons. He pleads that plaintiff is not a person of ordinary sensibilities, is old and childish in his likes and dislikes, and continuously complains of minor disturbances in the neighborhood in which he lives. He further pleads an estoppel against the plaintiff, by reason of certain statements made by plaintiff to defendant.

The evidence on behalf of the plaintiff tends to show that he and his family were annoyed and inconvenienced by reason of the noises produced in said garage by pounding and hammering iron and tin, and by cars, running and back-firing and throwing gas fumes into the air, which were blown by the wind into the residence of the plaintiff. Witnesses testified that the noise was so loud that the members of plaintiff's household could not talk to each other "without yelling;" that the smoke and gases from the garage and the running cars which were

being tested were carried into plaintiff's house. The evidence generally tended to support the allegations of plaintiff's petition.

Section 12395, Code of 1927, defines "nuisance" as follows:

"Whatever is injurious to health, indecent, or offensive to the senses, or an obstruction to the free use of property, so as essentially to interfere with the comfortable enjoyment of life or property, is a nuisance."

It is further provided by Section 12396 that:

"The following are nuisances: 1. The erecting, continuing, or using any building or other place for the exercise of any trade, employment, or manufacture, which, by occasioning noxious exhalations, offensive smells, or other annoyances, becomes injurious and dangerous to the health, comfort, or property of individuals or the public."

From their nature, nuisances are classified by some writers as *per se* or *per accidens*; by others, as a nuisance in law and a nuisance in fact. Nuisances *per accidens* or in fact are those which arise where a legitimate business is so conducted as to be a nuisance. It is apparent, therefore, that, when the matter under consideration is whether a given matter is a nuisance in fact, it depends wholly upon the surrounding facts and circumstances, the location where it is claimed said nuisance existed, and the manner and method of conducting the business.

It is not claimed that plaintiff is harmed by the filling station itself, or anything incidental thereto; neither is it claimed that plaintiff suffers any injury by reason of the storage of cars in the garage; and the situation here seems to be somewhat different from the ordinary filling station or a garage for the storage of cars. Defendant has, in addition thereto, a repair shop; and it is largely from the noise, fumes, gases, etc., incident to this repair shop that plaintiff lodges his complaint. But, however we may view this question, defendant's business is not in itself unlawful. It has been held that a garage is not a nuisance *per se,* in *Radney v. Town of Ashland,* 199 Ala. 635 (75 So. 25); *Huddleston v. Burnett,* 172 Ark. 216 (287 S. W. 1013); *People ex rel. Busching v. Ericsson,* 263 Ill. 368 (105 N. E. 315); *Diocese of Trenton v. Toman,* 74 N. J. Eq. 702 (70 Atl. 606); *Sherman v. Levingston,* 128 N. Y. Supp. 581; *Phillips v. Donaldson,* 269 Pa.

St. 244 (112 Atl. 236); *Lewis v. Berney* (Tex. Civ. App.), 230 S. W. 246; *Wasilewski v. Biedrzycki*, 180 Wis. 633 (192 N. W. 989). As bearing on this question, see also *City of Des Moines v. Manhattan Oil Co.*, 193 Iowa 1096.

We may, therefore, start with the proposition that the business conducted by the defendant was not in itself unlawful. A business of this kind, however, which is confessedly lawful may become a nuisance when located in a residential district. We have applied this doctrine in the following cases: *Shiras v. Olinger*, 50 Iowa 571; *Bushnell v. Robeson & Co.*, 62 Iowa 540; *Faucher v. Grass*, 60 Iowa 505; *Harley v. Merrill Brick Co.*, 83 Iowa 73; *Rhoades v. Cook*, 122 Iowa 336; *Payne v. Town of Wayland*, 131 Iowa 659; *McGill v. Pintsch Comp. Co.*, 140 Iowa 429; *Williams v. Wolfgang*, 151 Iowa 548; *Soderburg v. Chicago, St. P., M. & O. R. Co.*, 167 Iowa 123; *Andrews v. Western Asph. Pav. Corp.*, 193 Iowa 1047. None of the above cases, however, were garage cases, but the principle laid down is thoroughly fixed in the law of this state. In the following cases the same doctrine is announced, as applying especially to public garages: *Huddleston v. Burnett*, supra; *People ex rel. Busching v. Ericsson*, supra; *Wright v. Lyons*, 224 Mass. 167; *Mitchell v. Guaranty Corp.*, 283 Pa. St. 361 (129 Atl. 114); *Lewis v. Berney*, supra.

The question then is: Was this garage located in a residential district? There is no claim made in the case that any ordinances of the city are involved in this matter, and that this is a restricted residential district under the statute, the force and effect of which, if they existed, and the garage was a building which was prohibited because in a restricted residential district, would seem to make it a nuisance *per se.*

This question was quite hotly contested in the case at bar, but we are disposed to conclude that this part of the city is essentially residential in its nature. The fact that there may be manufacturing plants within a few blocks of the plaintiff's home will not prevent him from obtaining relief from the operation of the nuisance. Such was our expression in the case of *Williams v. Wolfgang*, supra. To the same effect, see *Simon v. Detroit Motor Valve Co.*, 233 Mich. 17 (206 N. W. 336).

In *Mitchell v Guaranty Corp.*, supra, the Pennsylvania court

said: "* * * The test is as to the immediate neighborhood, and not remote districts * * *."

We cannot set out the evidence in this matter, but we have reviewed the record with care, and reach the conclusion that the immediate part of the city where this building was constructed is essentially a residential district.

We then have left the question of whether the matters about which the plaintiff complains are such as entitle him to relief.

Plaintiff and the members of his family testify to facts which establish that the comfortable enjoyment of life and property to the plaintiff was essentially interfered with; that it was very uncomfortable in the home when these conditions existed, and they were disconcerted and annoyed thereby, their sleep at night was disturbed, and plaintiff's wife had ill health which she alleged was brought about thereby. It is true, the evidence shows that she was later suffering from diabetes, but as to whether or not this could have been produced by the conditions existing there, the physician who was a witness for the defendant, when asked whether or not these conditions could produce diabetes, testified that nobody knew what was the cause of diabetes.

In *Hughes v. Scheuerman Bros.*, 134 Iowa 742, it is suggested that an annoyance to justify an abatement must be such as would cause actual physical discomfort to a person of ordinary sensibilities. "A person of ordinary sensibilities" does not mean a person who is insensible to any nuisance, or a person who is peculiarly sensitive to annoyances of the character complained of. 46 Corpus Juris 678, Section 46.

The fact that plaintiff and his wife may have been of a quarrelsome disposition,—to which question much time was given, by way of proof in this case,—could not have much effect on this question. Plaintiff and his family are presumed to be persons of ordinary sensibilities. *State ex rel. Board of Health v. Lederer*, 52 N. J. Eq. 675; *Roukovina v. Island Farm Cream. Co.*, 160 Minn. 335 (200 N. W. 350).

As we have heretofore suggested, for plaintiff to obtain relief, it is not essential that the district be "exclusively" residential, or a restricted residential district. It is to be noted that the appellees do not very seriously contend that the district in question is not essentially residential.

It is to be noted also, in passing, that the appellees do not contend that this garage does not produce noise, smoke, gases, and odors in a degree and at the times and in the manner claimed by the plaintiff, or that these are not carried over upon plaintiff's premises and into his home. Their sole claim seems to be that such matters do not affect the appellant and his family injuriously.

The complaint of the plaintiff here is not only the offensive matters incident to the repair shop alone, but the manner in which the defendants conduct their business therein and thereabout; and of this we think the plaintiffs have a right to complain.

The defendants in their answer deny the existence of the nuisance, and no evidence was introduced upon the question of whether business could be so conducted that it would not be a  nuisance, if changes were made. We are disposed to think that the defendants should have the opportunity of so showing, if they can, and if they see proper to do so. But the plaintiffs should not be required to resort to another action to obtain rights to which we hold they are justly entitled. We think the desired end can best be accomplished by remanding the cause to the district court, with directions to permit the defendants, within such reasonable time as the court may direct, to introduce further evidence upon the question as to whether the manner of conducting said business can be so changed as to prevent the same from being a nuisance; the plaintiffs to have the opportunity of offering evidence in rebuttal of that introduced by the defendants. If the defendants decline to introduce any additional evidence, or if they do so, and the court is unable therefrom to determine that the said business can be so conducted as not to be a nuisance, then the court is directed to unconditionally enjoin its continuance; but if the court should find otherwise, then a decree should be entered, defining and protecting the rights of the parties. *Bushnell v. Robeson & Co.*, 62 Iowa 540.

It is further claimed by the appellees that, because they had a permit from the city to erect this garage and the additions thereto, there is no liability. The city could not, by its action

in issuing a permit or otherwise, authorize appellees to so conduct their business as to create a nuisance.

Lastly, it is claimed by the appellees that, by reason of certain statements made by the appellant to them, which, in substance, amounted to a congratulation on the success of their business, etc., he is estopped from complaining as he does. Appellees seem to have abandoned this contention, but it may safely be said that any such statement, if made, cannot be made the basis of an estoppel.—*Reversed and remanded.*

MORLING, C. J., and STEVENS, DE GRAFF, and WAGNER, JJ., concur.

KINDIG, J., dissents.

KINDIG, J. (dissenting).—I dissent on the theory that it is inconsistent for the court to say the garage was properly located, and then enjoin the defendant from doing the usual things in the operation thereof.

GRIMM, J., joins in this dissent.