CLYDE KIRK, Appellant, v. A. H. MABIS et al., Appellees.

No. 41493.

FEBRUARY 14, 1933.

Stipp, Perry, Bannister & Starzinger and Edward Robinson, for appellant.

Vernon W. Lynch, Strock, Sloan & Herrick, George P. Comfort, Chauncey A. Weaver, and C. R. S. Anderson, for appellees.

MITCHELL, J.—The appellant Clyde Kirk has owned, and, together with his family, consisting of his wife and two children, has

occupied as his home, the residence locally known as 2118 University Avenue, in the city of Des Moines, for a period of better than twenty years. The said premises face University Avenue and extend 47 feet in width and 192 feet in depth. The Mabis property, which adjoins the Kirk premises immediately to the east, comprises the large brick residence and grounds which constitute the southwest corner of 21st Street and University Avenue. Said property, which faces 21st Street and adjoins the Kirk property for the full depth of 192 feet, is described legally as follows: The west 47 feet of Lot 1 and the west 47 feet of the north 75 feet of Lot 2, in Block 1, of Cottage Grove Avenue Addition, now included in and forming a part of the city of Des Moines, Iowa.

On the 24th day of October, 1931, the appellee Caldwell purchased from the appellees A. H. Mabis and Mrs. A. H. Mabis the following described real estate, to wit: the east 210.5 feet of Lot 1, Block 1, Cottage Grove Avenue Addition, an addition now included in and forming a part of the city of Des Moines, Polk County, Iowa. The distance between the Kirk house line and the Mabis rear lot line is 15 feet, of which distance the Kirk driveway occupies a width of 8 feet. A space of ground 4 or 5 feet in width separates the Kirk and Mabis driveways. The Kirk house is so constructed that the living room, dining room, and a bedroom are on the east side, facing the Mabis residence.

On the 26th day of October, 1931, the appellee Caldwell entered into possession of said premises and occupied the same for use as an undertaking establishment. On that date, October 26, 1931, he conducted at that location one funeral. On the 28th day of October, 1931, the department of buildings of the city of Des Moines issued to appellee Caldwell a building permit for certain alterations of said premises for use as a funeral home, and on the same date issued to him a certificate of occupancy and compliance for use of the property as a funeral establishment. The appellant appeared in the office of the department of buildings the day the permit was issued, and objected to the issuance of said permit, and when the permit was issued, filed an appeal. On the 29th day of October, 1931, appellant filed a petition for an injunction and a restraining order against the appellees, and on the same date the court entered a temporary injunction restraining the use of said premises as an undertaking and embalming establishment. The appellees filed a motion to dissolve the temporary injunction and filed

separate answers. The appellee Roy W. Caldwell denied each and every allegation contained in the petition not admitted in his answer. He admitted that he is in the undertaking business, doing business under the trade name and style of Caldwell Funeral Home, and admitted that he purchased from the appellee Mabis certain real estate described in the appellant's petition; and he further pleaded as a defense that the property which he purchased and upon which he intends to locate his funeral home is included in the property covered by the zoning ordinance known as Ordinance No. 3619, duly passed by the city of Des Moines, and that said ordinance was in full force and effect on October 24, 1931, and that the property which he has purchased has been designated by said ordinance as in a commercial district. The said zoning ordinance of the city of Des Moines in force and effect on October 24, 1931, designates Lot 1, Block 1, of Cottage Grove Avenue Addition, as commercial. Caldwell further pleaded as a defense the fact that a permit had been issued by the proper officers of the city of Des Moines, authorizing and directing the use of the premises as a funeral home. Appellee Caldwell purchased the property hereinbefore described, upon which he is operating his funeral home, for the sum of $15,000 from the appellees A. H. Mabis and Mrs. A. H. Mabis.

The appellant has argued with a great deal of force that the establishment of a funeral home in a residential district is a nuisance. The only injury complained of by the appellant is that the carrying on of the undertaking and embalming business in the immediate vicinity of appellant's home had a depressing effect upon the appellant's family, by reason of its frequent reminder of mortality. The injury complained of was mental, rather than physical, and was one which did not affect all persons alike.

The authorities upon the question of whether a funeral home in a residential district is or is not a nuisance are very much divided. The appellant cites various cases in his brief. The main cases cited are discussed in the case of Stoddard v. Snodgrass, a recent case decided by the Supreme Court of the state of Oregon and found in 241 Pac. at page 73, and also in 43 A. L. R. 1160, 1163. It would be presumptuous of us to attempt to improve upon the treatment of these cases by the Supreme Court of Oregon. Of these cases the Supreme Court of Oregon says:

"Plaintiffs rely upon Densmore v. Evergreen Camp, 61 Wash.

230, 31 L. R. A. (N. S.) 608, 112 Pac. 255, Ann. Cas. 1912B, 1206; Saier v. Joy, 198 Mich. 295, L. R. A. 1918A, 825, 164 N. W. 507; Cunningham v. Miller, 178 Wis. 22, 23 A. L. R. 739, 189 N. W. 531; Leland v. Turner, 117 Kan. 294, 230 Pac. 1061.

"In the first case cited it was, in effect, held that the maintenance of an undertaking establishment in a residence part of a city, within a few feet of neighboring residences, may be enjoined by their owners as a nuisance, in view of the probable interference with the comfortable enjoyment of their property by the depressing effect of reminders of mortality and the escape of noxious odors and gases from the chemicals used in the business. This broad and unqualified statement of the law seems to have been somewhat restricted by that court in Rea v. Tacoma Mausoleum Asso. 103 Wash. 429, 435, 1 A. L. R. 541, 545, 174 Pac. 961, 962, where the court said: 'No decision has been called to our attention wherein any court has awarded injunctive relief, rested upon the sole ground of the mere presence of a cemetery or other place of sepulture, unattended by injurious or offensive drainage or fumes, sensible to the complaining party, and our own search leads us to believe that no such decisions have been rendered. . . . The Densmore Case involved the right of the plaintiff to injunctive relief, as against the maintenance of an undertaking establishment very close to his residence. That decision may seem to contain observations lending some support to the contentions of counsel for appellants, but, when critically read, we think it will be found not to rest upon the mere unpleasantness attending the close proximity of dead bodies, but also upon the fact, as therein stated, that "there is evidence tending to show that noxious odors, gases, especially those arising from the deodorants used in cleansing the premises, would permeate the homes of respondents; that there is danger of infection and contagion from the proximity of the morgue, and the possibility of flies passing from one place to the other." '

"Again, in Linsler v. Booth Undertaking Co., 120 Wash. 177, 206 Pac. 976, which was a suit brought by the owners of adjacent and nearby property and a school district to restrain the defendant from conducting an undertaking establishment, which was located within a district where the carrying on of such business was authorized by an ordinance of that city, that court refused to restrain the defendant, and, referring to the Densmore Case, said that that case 'is distinguishable. There, there was no ordinance of the city of

Everett authorizing the undertaking establishment in the place where it was conducted, while here, as already pointed out, the respondent's business is located within the district prescribed by the ordinance for such purpose. That may be a nuisance which exists without authority of law, yet not a nuisance if so authorized.' ·

"Here defendants were authorized by the city to conduct their business at the place where it is now being conducted, although it does not appear that such authority was conferred by ordinance. The manner in which the authority was conferred is not shown, but it would seem that, even under the law as announced by the Washington decisions, defendants, being authorized by the city to conduct their business at said place, could not be enjoined from conducting their business at the suit of adjacent or nearby owners, unless it was shown that the business, as conducted, was a nuisance.

·"The Michigan case cited followed and applied the same doctrines that were announced in the Densmore Case, while in the Wisconsin case cited the decision was based upon a finding of fact which recited that 'it is impossible to keep the same entirely free from flies, and that some offensive odors, arising from the use of embalming fluids and from dissected bodies at times when autopsies are made, escape therefrom to adjoining premises.'

"In the Kansas case cited there was an ordinance making it unlawful to maintain an undertaking establishment at the place where it was being conducted. That case, therefore, and other cases where similar ordinances were involved, are not in point."

This question is one of first impression in this court, but in the case at bar we do not think it necessary to decide, and we do not decide, whether or not a funeral home in a residential district is a nuisance *per se*. In the case at bar, the property upon which the appellee Caldwell is operating his funeral home is in a district which has been properly and duly zoned by the city of Des Moines and designated as a commercial district. The question now before this court in this case is whether or not a funeral home, under the circumstances and conditions as set out in this record, located in a district designated as a commercial district, should be enjoined and the property owner restrained from using his property as a funeral home. No attack has been made by the appellant upon the zoning ordinance in this case. There is no showing made in this record that there were any noxious fumes or gases which have been de-

tected by anyone outside of said building; no evidence tending to show that any disease has ever been communicated to anyone from the conduct of the said business by the appellee Caldwell. The appellant in this case bases his right to injunctive relief solely upon the fact that the carrying on of a funeral home in the property adjoining his residence, the frequent bringing and removal of dead human bodies to and from said building and their being kept in said building for the purpose of preparing them for burial, the coming and going of ambulances and hearses, the holding of funeral services, and the frequent passing of funeral processions past his home, will be constant reminders of mortality, and will have such a depressing effect upon the mental condition of the appellant and the members of his family that it will render them more susceptible to disease and will deprive the appellant and his family of the right to enjoy the comfort and repose of their home; and that it will also depreciate the value of the appellant's property.

There is nothing in this record which shows that appellee Caldwell has not conducted his business in a proper manner. He has carried on his business as an undertaker in an appropriate manner. The record shows that only one funeral has been held from the funeral parlor of the appellee, and that he had occupied the premises as a funeral home only two or three days prior to the commencement of this action.

The appellant argues with a great deal of force that a business which is ordinarily lawful, beneficial, or even indispensable, may constitute a nuisance if it is located in a residential district of the city, citing, among other cases, the case of Higgins v. Decorah Produce Co., 214 Iowa 276, and Pauly v. Montgomery, 209 Iowa 699.

In the case of Higgins v. Decorah Produce Co., supra, the plaintiff sought to enjoin the operation of a produce company, which operated a poultry and produce plant in the city of Decorah. This court found that there were odors which permeated the premises of the plaintiff, and that, as every property owner has the right to have the air diffused over his premises in its natural state and without being filled with foreign substances such as smoke, soot, and other offensive matter, the defendant should be required to take certain sanitary measures to reduce the odors to a minimum. In the case at bar there is no evidence of any odors permeating the premises of the appellant. The only competent testimony in the record in respect to nuisance is testimony that there would be a constant

reminder of mortality, which would have a depressing effect upon the mental condition of the members of appellant's family.

In the case of Pauly v. Montgomery, supra, this court said that there was no claim of any city ordinance involved in the matter, and the court found that on account of the manner in which the business was being carried on it was a nuisance; although it will be seen by the dissenting opinion of Justice Kindig that this court did not say that the mere fact that a garage was located in a district where there were residences ordinarily made the garage a nuisance. This court reversed the case and remanded it to the district court with directions to permit the defendants, within such reasonable time as the court might direct, to introduce further evidence upon the question as to whether the manner of conducting said business can be so changed as to prevent the same from being a nuisance.

In the case of Linsler v. Booth Undertaking Co., reported in 206 Pac. 976 (Wash.), there was an ordinance of the city of Seattle which permitted the establishment of a funeral home where the appellee, the Booth Undertaking Company, had established its funeral home. The court, after admitting that the undertaking business depreciates the value of near-by property for residence purposes, and also brings into the homes of those living near by an element of discomfort and lack of repose such as would have a depressing effect upon the mind of the average person, states that the funeral business is not a nuisance *per se*, and that the ordinance which permitted the establishment of a funeral home in the district in which it was located is valid; and went on to say, as follows:

"It thus appears that the undertaking establishment here in question was authorized by an ordinance, which ordinance is controlling unless it be inconsistent with some general law. The appellant's claim that it is inconsistent with Section 8309 of Remington's 1915 Code, which provides:

" 'Nuisance consists in unlawfully doing an act, or omitting to perform a duty, which act or omission either annoys, injures or endangers the comfort, repose, health or safety of others, offends decency, or unlawfully interferes with, obstructs or tends to obstruct, or render dangerous for passage, any lake or navigable river, bay, stream, canal, or basin, or any public park, square, street or

highway; or in any way renders other persons insecure in life, or in the use of property.'

"It will be noticed by this statute that a nuisance consists in doing an act which is unlawful and which injures or endangers the comfort, repose, health, or safety of others. The business complained of being conducted in pursuance of the ordinance which has the force of a general law was not made unlawful by this statute. The statute applies to the unlawful doing of an act. If the statute were given the effect of making an undertaking business a nuisance when placed in close proximity to the residence of others, it would deprive the city of its right to exercise of police power in this regard where respondent's property was affected thereby. It is not claimed in this case that the ordinance was unreasonable and therefore should be set aside as being such. The case of Densmore v. Evergreen Camp No. 147, W. O. W., 61 Wash. 230, 112 Pac. 255, 31 L. R. A. (N. S.) 608, Ann. Cas. 1912B, 1206, is distinguishable. There, there was no ordinance of the city of Everett authorizing the undertaking establishment in the place where it was conducted, while here, as already pointed out, the respondent's business is located within the district prescribed by the ordinance for such purpose. That may be a nuisance which exists without authority of law, yet not a nuisance if so authorized. In Transportation Co. v. Chicago, 99 U. S. 635, 25 L. Ed. 336, it was said:

" 'A Legislature may and often does authorize and even direct acts to be done which are harmful to individuals, and which without the authority would be nuisances; but in such a case, if the statute be such as the Legislature has power to pass, the acts are lawful, and are not nuisances, unless the power has been exceeded.'

"So, here, it may be admitted, but not decided, that in the absence of the ordinance the undertaking establishment would constitute a nuisance and would be controlled by the Densmore Case, supra."

So it is in the case at bar. There is an ordinance which designates the property which the appellee Caldwell is using as a commercial district. Any business, other than those expressly excluded by the ordinance, if properly conducted, so that it would not in and of itself be a nuisance, may be conducted in the district covered by the ordinance. There is nothing in the ordinance which excludes a funeral home. It must be admitted that the business of operating

a funeral home is a lawful and necessary business; that if it is operated in a proper manner, and in a proper location, it is not a nuisance *per se*. In the case at bar there is no question raised but that the appellee Caldwell exercised proper, reasonable, and ordinary care in the conduct of his business. There is no showing that in the manner in which he operated his business it was a nuisance. The property upon which he is operating his business being designated as a commercial district, it is a proper and fit place for a funeral home, and the judgment and decree of the lower court was proper, and it is hereby—Affirmed.

All Justices concur.