C. E. Amdor, appellant, v. Wesley Cooney et al., appellees.

No. 47682.

(Reported in 43 N.W.2d 136)

June 13, 1950.

Lee R. Watts, of Corning, for appellant.

Thos. E. Mullin, of Creston, E. W. Mullin and Harvey J. Kittleman, both of Corning, for appellees.

GARFIELD, J.—The question presented is whether plaintiff is entitled to injunctive relief against the use of land adjoining his farm home for baseball games.

Since about 1940 plaintiff has owned and occupied an eighty-acre farm one and one-fourth miles from the town of Carbon (1940 population three hundred eighty-three). His buildings face east near the southeast corner of the farm. There is a road along his east line and one along his south line. Across the north and south road east of plaintiff's farm is a farm occupied by defendant Cooney, owned by defendant Stone. In the southwest corner of that farm is a pasture of three acres used in season since the spring of 1946 for playing baseball. The diamond is near the southwest corner of the field, across the road from plaintiff's buildings. Home plate is about one hundred twenty-five feet from plaintiff's house. The gate to the ball park, if it can be called such, is in front of plaintiff's house.

Plaintiff brought this action in equity in June 1949 to enjoin as a nuisance use of the three acres for the baseball games. Defendants other than Cooney and Stone are members of the Carbon baseball team which uses the park. They admit

they will continue, with others, to use it. All defendants admit they consent to such use. They deny the existence of a nuisance and allege plaintiff helped establish the park and is therefore estopped from maintaining the action.

After plaintiff had testified and rested his case defendants moved to dismiss it on the grounds no material damage was proven and plaintiff is estopped from claiming there is a nuisance. The trial court sustained this motion apparently because it felt the evidence was insufficient to warrant an injunction. The court suggested to defendants, however, it would be well to move the home plate to the northwest corner of the three acres and warned them that future conditions might justify an injunction.

■ Dismissal of the action operates as an adjudication on the merits. Rule 217, Rules of Civil Procedure. Defendants offered no evidence. The case therefore comes here for review de novo (rule 334, R. C. P.) upon plaintiff's own testimony and nothing else.

We have pointed out that the practice of moving to dismiss an equity case at the close of plaintiff's evidence is not to be commended and is perilous procedure. If a defendant obtains a favorable ruling on his motion he precludes himself from offering testimony and may be defeated upon appeal because he did not produce the evidence which would have saved him. Coen & Conway v. Scott County Sav. Bk., 205 Iowa 483, 487, 218 N.W. 325; Dee v. Collins, 235 Iowa 22, 28, 15 N.W.2d 883, 887.

Section 657.1, Codes 1946 and 1950, provides: "Whatever is * * * offensive to the senses, or an obstruction to the free use of property, so as essentially to interfere with the comfortable enjoyment of life or property, is a nuisance * * *."

■ It is settled that neither the game of baseball nor a baseball park is a nuisance per se but either may be so conducted as to be a nuisance in fact. See Ness v. Independent School District, 230 Iowa 771, 777, 298 N.W. 855, 858; Casteel v. Town of Afton, 227 Iowa 61, 65, 287 N.W. 245, 247; Spiker v. Eikenberry, 135 Iowa 79, 83, 110 N.W. 457, 458, 11 L. R. A., N. S., 463, 124 Am. St. Rep. 259, 14 Ann. Cas. 175; Joyce on Nuisances, section 390, page 565; 39 Am. Jur., Nuisances, section 72; 46 C. J., Nuisances, section 95.

'Each case of this nature is to be decided upon its own facts. Casteel v. Town of Afton, supra; Tarr v. Hopewell Community Club, 153 Wash. 214, 279 P. 594, 595; 39 Am. Jur., Nuisances, section 16, page 298; 46 C. J., Nuisances, section 18, page 654.

Plaintiff's first knowledge of the baseball diamond was in the spring of 1946 when it was being made. He did not assist in its construction although "they" borrowed some tools from plaintiff's wife. Plaintiff made no objection to the diamond or its use until the summer of 1947 after the games had become more frequent and better attended and more balls came upon his premises. At first he did not think it would cause him injury or be a nuisance.

There are no permanent seats in the "park"—only planks resting on cement blocks—no toilet facilities nor water supply and apparently no lights for night games.

In 1946 the diamond was used only about once every two weeks, usually on Sunday. Use increased in 1947. In 1948 and 1949 there were games nearly every Sunday and as often as three evenings a week. Carbon has a good team which belongs to a so-called league. In 1946 and usually in 1947 "they passed the hat" for contributions from spectators. In 1948 and 1949 regular admission was charged.

Plaintiff testified, "I have had plenty of balls fall on my property during the last 2 or 3 years. [Trial was in January 1950.] They come against the end of the house, in the garden, practically all over the place." In the last two or three games in 1948 and 1949 plaintiff picked up a total of forty-two balls, an average of eight or ten each game, and thought they were only a small part of the balls that fell on his premises. In 1948 and 1949 the ball team paid a nickel for each ball that was retrieved and seven to ten children would race into plaintiff's yard after each ball that fell there. One little girl retrieved thirteen balls in plaintiff's yard during one game. The balls went through plaintiff's flowers and broke flower boxes.

Spectators at the games damaged plaintiff's trees. Girls got into his garden, broke his peach trees and threw peaches in the corn lot. Until about the time plaintiff brought this suit the road in front of plaintiff's buildings was blocked by parked

cars of spectators. However, this condition has improved much since the action was commenced.

"They used to back up in the yard. Some fellows backed into my car and knocked it through the end of my garage the second time. It was impossible to get away during the games because you almost had to police the place. The customers at the games go on my premises and about the barns. So many things happened. Children in the barn lot chased the cows. I found beer cans and whiskey bottles in the barn and gates unlatched. Two little boys were smoking in the hen house one hot day. There was danger of fire." Plaintiff has missed some things. In the spring of 1948 some cabbage plants were taken off the back porch.

Plaintiff further said, "I feared for my safety and the members of my family from balls coming over there. I had to run my car around behind the house to keep it from getting hit with balls. * * * I have never been hit by a ball. They came awful close. There was some women on the porch and a ball went under it. * * * A ball hasn't broken any windows yet. * * * Several hit the sides and roof of the house." Once plaintiff and his daughter were about to leave in his car when a foul ball "almost smacked right into the car."

"Spectators have continuously to some extent used my toilet at times, used the toilet on top of the seat and urinated all over the toilet more than once. They practically pumped my well dry once. One night at practice the pump was broken while I was gone. The boys all come over to get their drinks after they played. Some very good people attended the games, other classes too. I have observed plenty of beer cans and whiskey bottles about the place, usually along the side of the roads. Once I found them throwing them in the garage. I have gathered them up at different times. In 1948 and 1949 after the boys joined the league people came from all around to attend the games, very large crowds."

Plaintiff testified further the diamond could be moved to any other corner of the three-acre field. "If the diamond was moved to another corner it would solve most of my troubles." In 1948 a defendant-ballplayer agreed with plaintiff it would be better if the diamond were moved to the north end of the

field and said "we are going to move it another year." The game would be away from all houses if the diamond were moved to the northwest corner and plaintiff tried to have that done. There is a nice parking place at the north end of the field. Plaintiff also said Bixler's park, three or four miles from Carbon, would be a much nicer place and make more money, "they" used to have a diamond there and it is a good location.

Before starting this suit plaintiff left $100 with an attorney in the county seat (plaintiff's argument says he was the county attorney) and told the team's manager they could have any or all of the money if they would move the diamond from in front of his house. Plaintiff would rather it would be moved off the Cooney premises and had that in mind when he deposited the $100 but would not say it was left on that condition.

Apparently the diamond could be moved to the northwest corner of the field at small expense by stripping the sod for a new diamond and moving some poles and woven wire which form a backstop behind home plate.

At times children and young people came to the park and played for sport. Plaintiff's grandchildren played there. However, these occasions did not bring the crowds the regular games did and very few balls were batted onto plaintiff's premises. Apparently plaintiff has little ground for complaint against use of the park by children or younger boys.

Defendants emphasize the fact that neither plaintiff nor any of his windows was ever struck by a foul ball. Attention is also called to this answer of plaintiff on cross-examination: "Q. They haven't hurt you very much, have they? A. They haven't hurt me, only my feelings." Plaintiff added, "It isn't very nice to have a ball sailing around your head and over your house and in your garden." Much is made too of the fact that in 1946 and early summer of 1947 plaintiff or his wife sold some pop and other soft drinks from his front porch or yard. This was discontinued about June 1947. Plaintiff testified he sold these drinks reluctantly and only at the request of spectators. Before plaintiff stopped selling drinks children of defendant Cooney began selling them at the park.

Defendants argue that much of plaintiff's trouble is chargeable to people who went to his place at his implied invitation

to get soft drinks and that competition of the Cooney children in selling drinks hurt plaintiff's feelings. We think, however, the evidence does not support the argument. Plaintiff's principal grounds of complaint arose or were much aggravated after he stopped selling soft drinks and he insisted the Cooney boys' actions had nothing to do with the controversy.

Upon the undiputed testimony we think plaintiff is entitled to relief. It is true, as defendants suggest, injunctions are granted sparingly, with caution and only in clear cases. See Martin v. Beaver, 238 Iowa 1143, 1148, 29 N.W.2d 555, 558; Wood Bros. Thresher Co. v. Eicher, 231 Iowa 550, 557, 1 N.W.2d 655, 659; Thomas v. City of Grinnell, 171 Iowa 571, 577, 153 N.W. 91; Payne v. Town of Wayland, 131 Iowa 659, 662, 109 N.W. 203; 39 Am. Jur., Nuisances, section 153, page 421; 46 C.J., Nuisances, section 373.

It is also true that granting or refusing an injunction ordinarily rests largely in the sound, judicial discretion of the trial court and we are somewhat reluctant to interfere with its decision. See Wood Bros. Thresher Co. v. Eicher, supra, 231 Iowa 550, 559, 1 N.W.2d 655, 660; 46 C.J., Nuisances, section 374; 28 Am. Jur., Injunctions, sections 35, 36. We feel the refusal of any relief upon this undisputed evidence was an abuse of discretion.

There is a rule similar to that of Code section 657.1, heretofore quoted, that one must so use his own property as not to interfere unreasonably with his neighbor's comfortable and reasonable enjoyment of his property. Payne v. Town of Wayland, supra, 131 Iowa 659, 662, 109 N.W. 203; Edmunds v. Duff, 280 Pa. 355, 124 A. 489, 33 A. L. R. 719, 723. See also 39 Am. Jur., Nuisances, section 16; 46 C.J., Nuisances, section 18. This seems applicable here.

To justify abatement of a claimed nuisance the annoyance must be such as to cause actual physical discomfort to one of ordinary sensibilities. Casteel v. Town of Afton, supra, 227 Iowa 61, 65, 66, 287 N.W. 245; Pauly v. Montgomery, 209 Iowa 699, 704, 228 N.W. 648; 39 Am. Jur., Nuisances, section 31; 46 C. J., Nuisances, section 46. We think such an annoyance has been shown. There is no basis for the conclusion plaintiff is not one of ordinary sensibilities. In this connection

we have held it is presumed, in the absence of evidence to the contrary, that a plaintiff has ordinary sensibilities. Pauly v. Montgomery, supra.

We see no good reason why this baseball diamond, under the circumstances that have existed the last two years, must remain directly across the road from plaintiff's home when it could so easily be moved to what is shown without dispute to be a better location where it would not essentially interfere with the comfortable enjoyment of plaintiff's property or anyone else's home.

We are clear plaintiff should not be denied relief on any theory of acquiescence or estoppel. This claim is an affirmative defense upon which defendants had the burden of proof. It has not been established. It is true that while he did not encourage making the baseball diamond plaintiff did not object thereto. He was hopeful it would be so used as not to be a nuisance. Making the diamond and playing baseball there were lawful acts to which plaintiff had no right to object. As stated, neither the game of baseball nor a baseball park is a nuisance per se. See authorities supra, also Riffey v. Rush, 51 N. D. 188, 199 N.W. 523, 525; annotations 33 A. L. R. 725, 727, 62 A. L. R. 782.

If plaintiff had attempted to prevent construction of the diamond or playing of games before they were so conducted as to be a nuisance in fact he would have been met with the rule that a threatened or anticipated nuisance will not be enjoined unless it clearly appears a nuisance will necessarily result from the act it is sought to enjoin. Relief will usually be denied until a nuisance has been committed where the thing sought to be enjoined may or may not become such, depending on its use or other circumstances. See Thomas v. City of Grinnell, supra, 171 Iowa 571, 577, 153 N.W. 91; Payne v. Town of Wayland, supra, 131 Iowa 659, 662, 109 N.W. 203; Shiras v. Olinger, 50 Iowa 571, 574, 32 Am. Rep. 138; Riffey v. Rush, supra, 51 N. D. 188, 197, 199 N.W. 523, 525, 526; annotations 7 A. L. R. 749, 763, 26 A. L. R. 937, 940, 32 A. L. R. 724, 55 A. L. R. 880; 39 Am. Jur., Nuisances, section 151; 46 C.J., Nuisances, section 375.

Knowledge or acquiescence in the erection of a structure will not estop one from suing to abate it as a nuisance because of the manner of its operation. Plaintiff was not required to anticipate that the diamond would be so used as to become a nuisance. See Payne v. Town of Wayland, supra, 131 Iowa 659, 664, 109 N.W. 203; 39 Am. Jur., Nuisances, section 198; 46 C. J., Nuisances, section 386.

A decree in this class of cases should not go beyond the requirements of the particular case. See Ness v. Independent School District, supra, 230 Iowa 771, 776, 777, 298 N.W. 855, 857, 858; Casteel v. Town of Afton, supra, 227 Iowa 61, 66, 287 N.W. 245; Shiras v. Olinger, supra, 50 Iowa 571, 575, 32 Am. Rep. 138; 39 Am. Jur., Nuisances, section 172; 46 C.J., Nuisances, section 416.

Further, it is proper, where a nuisance arises from the manner in which property is used, to afford defendants an opportunity, before the issuance of an injunction, to change such use so it will not amount to a nuisance. 39 Am. Jur., Nuisances, section 172, pages 445, 446; 46 C.J., Nuisances, section 419.

It would seem use of this field for baseball games can be so changed that it will not amount to a nuisance. Plaintiff himself testified and says in argument that moving the diamond to the northwest corner of the field would largely obviate his complaints. As stated, a defendant agreed with plaintiff it would be better if the diamond were at the north end and the trial court suggested the home plate be moved to the northwest corner. We are disposed not to order issuance of an injunction unless defendants fail within a reasonable time so to change use of the field that it will not amount to a nuisance. If such change is not made within forty-five days from the issuance of procedendo herein then defendants should be enjoined from using the three-acre field substantially in the manner and under the circumstances of its use in 1948 and 1949 which we have held to be a nuisance. If such change is made within said time plaintiff's petition shall then be dismissed. Court costs should be taxed to defendants. The cause is reversed and remanded to the trial court for disposition pursuant to this opinion.

In a general way these precedents support the disposition we have made of the case: Shiras v. Olinger, supra, 50 Iowa

571, 575, 32 Am. Rep. 138; Bushnell v. Robeson & Co., 62 Iowa 540, 549, 550, 17 N.W. 888; Hughes v. Scheuerman Bros., 134 Iowa 742, 745, 746, 112 N.W. 198; Pauly v. Montgomery, supra, 209 Iowa 699, 705, 228 N.W. 648; Ness v. Independent School District, supra, 230 Iowa 771, 776, 777, 298 N.W. 855, 857, 858. Here, however, it would seem to be unnecessary to take further testimony as to whether the nuisance may be obviated by change of use since that already appears.

Casteel v. Town of Afton, supra, 227 Iowa 61, 287 N.W. 245, relied upon by defendants, in which relief was denied, is not controlling. The facts differ in several respects. For one thing there the practice of retrieving balls had been abandoned. As previously indicated, the Casteel opinion stated (page 65 of 227 Iowa) "Each case of this nature must depend upon its own facts." It does not appear from the cited opinion that the manner of use of the area could be readily changed to obviate the matters complained of.—Reversed and remanded.

All JUSTICES concur.