AFFFIRMED.

BUSHNELL ET AL. v. ROBESON & Co. ET AL.

1. **Nuisances:** SLAUGHTER-HOUSES IN CERTAIN LOCATIONS ARE PRIMA FACIE. A slaughter-house in a city or public place, or near a highway, or where numerous persons reside, is *prima facie* a nuisance. It is accordingly *held* that the slaughter-house of defendants, situated as it is shown to be by the evidence, must be regarded as a nuisance.

2. ———: ACTION TO ENJOIN: PARTIES PLAINTIFF: JOINDER. Although a nuisance may affect the public at large, yet where an individual suffers special injury therefrom, he is entitled to sue for relief; and several individuals so specially injured in the enjoyment of their homes may join in an action for the abatement of the nuisance, notwithstanding they severally own the property on which they reside.

3. ———: REMEDY BY INJUNCTION IN EQUITY: STATUTES CONSTRUED. Inasmuch as courts of equity, prior to the adoption of the Code of 1873, had jurisdiction to restrain by injunction the continuance of nuisances, that jurisdiction still exists, (Code, §§ 2508, 3386,) notwithstanding a remedy by action at law is provided by section 3331 of the Code.

4. ———: PRIOR ESTABLISHMENT OF: USE OF ADJACENT LAND NOT PREJ-
UDICED BY. One person cannot erect a nuisance upon his land adjoin-
ing vacant land owned by another, and thus measurably control the
use to which his neighbor's land may in the future be subjected; and
the fact that the nuisance in this case complained of was erected prior
to the time when plaintiffs built their residences upon the neighboring
lots, is no reason why a court of equity should remit them to a court of
law for their remedy.

5. **Practice**: PETITION NOT SUFFICIENTLY SPECIFIC: EFFECT ON EVI-
DENCE. A petition in equity, filed by several property owners, to abate
a nuisance affecting their property, but which fails to state whether the
plaintiffs jointly or severally own the property affected, may be vulner-
able to a motion for a more specific statement; but defendants, failing
to make such motion, cannot on the trial object to evidence tending to
show the character and extent of plaintiffs' interest in the property.

6. **Nuisance**: ABATEMENT IN EQUITY: CONDITIONAL OR UNCONDITIONAL
DECREE: PRACTICE. Where a court finds an establishment (a slaughter-
house in this case) to be a nuisance as conducted, it should allow the
defendants to show, if they can, that it is possible to continue the busi-
ness in the same place without its being a nuisance. If this can be done,
the court should by its decree determine the conditions upon which the
business may be continued; otherwise the decree should unconditionally
enjoin the further operation of the establishment.

*Appeal from Scott Circuit Court.*

FRIDAY, DECEMBER 14.

THE petition states that the defendants are the owners of a
slaughter-house, which is situated near the limits of the city
of Davenport, and near one of the suburbs thereof, in which
the plaintiffs reside. "That at said slaughter-house large num-
bers of cattle, sheep and hogs are confined in small enclosures
or pens, where they are fed and watered, and the excrement,
decayed food, slop and other filth, retained and allowed to de-
cay; that said cattle, sheep and hogs are at said place killed
and slaughtered and dressed and prepared for market, and the
excrement and useless parts of said cattle, sheep and hogs are
retained and allowed to decay on said premises, and the tal-
low, lard, fat, etc., from said animals is melted down and sep-
arated from other matter at said premises, and other work
and labor, such as is usually carried on and conducted at such

places and in that business, is there carried on and conducted." That there is no adequate drainage on said premises, and, "by reason of the aforesaid matters, said slaughter-house, yards and pens cause and occasion noxious exhalations and offensive smells, greatly corrupting and infecting the air in said vicinity and neighborhood, and other annoyances dangerous and injurious to the health, comfort and property of plaintiffs, and others residing in said vicinity, and offensive to the senses, and an obstruction to the free use of said property, so that the same essentially interferes with the comfortable enjoyment of life and property in said neighborhood, and is a nuisance."

The relief asked is that "said slaughter-house, yards, pens, etc., be declared and decreed to be a nuisance, and that said defendants and their agents, employes, and any and all persons acting or claiming under them, may be forever enjoined and restrained from further carrying on or conducting said business at said place, and that a writ of injunction may be issued."

Certain paragraphs of the petition were stricken out on motion, and the answer generally and specially denied most of the material allegations of the petition. The court found for the plaintiffs, and entered a decree enjoining the defendants from continuing said business on the premises in "any such way or manner as to cause a repetition or continuance of the nuisance." Both parties appeal, but the plaintiffs did not do so until after the defendants had appealed.

*Davison & Lane*, for appellants.

*Bills & Block*, for appellees.

SEEVERS, J.—I.  We have examined the evidence, and have reached the conclusion that the allegations of the petition are sustained by a preponderance of the evidence. The plaintiffs introduced thirty witnesses, and the defendants forty-three.  The evidence is lengthy.  It is fully set forth in the abstract— about one hundred and fifty-five pages being required for

1. NUISANCES: slaughter-houses in certain locations are prima facie.

that purpose. It is obvious that we cannot and should not occupy the space in the reports which would be required to comment largely on this evidence. It is directed to the single point whether the stench from the slaughter-house and pens is injurious to health, and interferes with the comfortable enjoyment of life and property. Code, § 3331.

The evidence on the part of the plaintiffs is affirmative in character, while that introduced by defendants is necessarily negative.

But the evidence introduced by the plaintiffs is sustained by some of the witnesses introduced by the defendants. Some of the witnesses of the latter, while admitting that there were smells emanating from the slaughter-house, say that they suffered no inconvenience therefrom, and others say there were offensive odors at times, and that they would not like to live within the range thereof if they existed all the time.

We cannot disregard or fail to give due weight to the plaintiffs' witnesses, who testify affirmatively that there are odors emanating from the defendants' premises, which are injurious to health, and render the comfortable enjoyment of property impossible.

It appears from the evidence that cattle, sheep and hogs are slaughtered on the premises, and the refuse thereof, consisting of the heads, feet and entrails, are usually boiled in a kettle and fed to the hogs. The entrails of lambs have been so fed without being cooked. Tainted meat and tallow also have been rendered or cooked on said premises on at least two occasions.

From some of these sources, and from the pens, we are forced to the conclusion that there emanate odors and smells which are injurious to health and the comfortable enjoyment of property.

We are not prepared to say that the premises are not kept as clean as the business carried on will permit. Nevertheless, we think such business, while necessary and essential, when carried on at the place it is, must be regarded as a nuisance.

Slaughter-houses in a city or public place, or near a high-way, or where numerous persons reside, are *prima facie* nui-sances. Wood's Law of Nuisances, § § 504, 505; *Catlin v. Valentine*, 9 Paige, Ch., 575; *The State v. Kaster*, 35 Iowa, 221.

The defendants' slaughter-house is about seven hundred feet north of the limits of the city of Davenport. But west of the house is Grant's addition, about five hundred feet distant.

Between the defendants' premises and said addition there is a public highway, known as the Dubuque road, which con-nects with or is an extension of Brady street in said city.

Robinson & Ballew's addition is north of the slaughter-house, and about seven hundred feet distant. South avenue is a public highway, and is the southern boundary of said addition.

Defendant's premises abut on Farnam street on the east, which is about eight hundred feet from the slaughter-house. The city engineer testifies that "the character of the neighbor-hood where defendants' slaughter-house is is for residences." Grant's addition is laid off in lots and blocks, and there are fifteen or more residences thereon, some of which are directly across the Dubuque road from the premises of the defendants, and others immediately across said road, but on an angle therefrom.

Robinson & Ballew's addition was, as we believe, originally laid off into ten-acre lots, but a portion of it has been sub-divided into smaller tracts. It is occupied as residences, and some, at least, of the residents are engaged in gardening. Across Farnum street, directly east and northeast of the de-fendants' premises, are two residences.

From this brief and possibly imperfect statement, it will be seen that the slaughter-house is practically surrounded by residences that are, at most, not more than five hundred to one thousand feet distant. We feel constrained to say that, situated as the slaughter-house and pens are, and the business

there conducted, they are and must, under the evidence, be re-garded as a nuisance.

II. But counsel for the defendants insist that, as there are four or more plaintiffs, the injury suffered by them must be separate and distinct from that suffered by the public, and if this does not appear the plaintiff; are not entitled to the relief asked. A nuisance may be both public and private. *Park v. The C. & S. W. R. R. Co.*, 43 Iowa, 636. That is to say, a nuisance may affect the public, and yet an individual may be injuriously affected in such capacity as to be distinguished from the public at large. When this is the case, he is entitled to relief. Now, in the case at bar, the plaintiffs, because of the location of their residences, as we find, have suffered damages as distinguished from the public at large. This is apparent from the evidence; for, conceding the nuisance to be public, the plaintiffs have suffered private damages, because several of the defendants' witnesses testified that they did not suffer any damage, although they reside in the neighborhood. Nor were the plaintiffs at all times inconvenienced thereby, but only at times, or possibly when the wind was from certain directions. At times one person suffered and at other times others. This being so, the whole public or neighborhood were not equally affected, and some persons seem to have suffered no inconvenience whatever.

We think the objection to plaintiffs' recovery under consideration is not well founded. Although the plaintiffs separately own the property on which they reside, we are of the opinion that they can unite in asking the relief sought. *Robinson v. Baugh*, 31 Mich., 290; *Brandirff v. Harrison Co.*, 50 Iowa, 164; *Robbins v. S. C. Turnpike Co.*, 34 Ind., 461; *Trustees v. Cowen*, 4 Paige, 510; High on Injunctions, 1st edition, § 748.

III. Counsel for the appellants insist that plaintiffs have a plain, speedy and adequate remedy at law, and therefore are

*[margin note: 2. ——: action to enjoin: parties plaintiff: joinder.]*

3. ——: remedy by injunction in equity: statutes construed. not entitled to relief in equity; because it is provided by statute that an action at law may be brought by any one who is injured by a nuisance, and in which action the nuisance may be enjoined or abated. Code, § 3331.

This question was somewhat considered, but not determined, in *Daniels et al. v. Keokuk Water Works*, 61 Iowa, 549. In that case it was said that, under a similar statute, it had been so held in Wisconsin. *Remington v. Foster*, 42 Wis., 608. In the cited case, the court so held on the ground that the statute "abrogated the equitable remedy" theretofore existing, and substituted the legal.

But, as was said in that case, there is no doubt that the equitable remedy at one time existed in that state. It will not be doubted, we apprehend, that this is true as to this state. The question, then, is whether such equitable remedy has been abrogated. In addition to the foregoing statute, there is another which provides that "an injunction may be obtained as an independent remedy in an action by equitable proceedings, in all cases where such relief would have been granted in equity previous to the adoption of this Code   *   *   *;" (Code, § 3386;) and "the plaintiff may prosecute his action by equitable proceedings in all cases where courts of equity before the adoption of this Code had jurisdiction   *   *." Code, § 2508.

Under the foregoing statute, the remedy in equity, which, prior to the adoption of the Code, was freely administered, continues to exist because of the express terms of the statute. The several statutes must be construed together, and, this being done, there has been added to the legal remedy, which has existed for more than a hundred years, the provision that an injunction might issue, and thus make the legal remedy more effectual. A plaintiff may pursue either. This view is recognized, at least, in *Ewell v. Greenwood*, 26 Iowa, 377. It is, however, doubtful whether the point now made by counsel was directly presented in the case cited. But

Bushnell et al. v. Robeson et al.

the court must, it seems to us, have considered and necessarily determined the question under consideration. Counsel for the appellants maintain that section 3386 of the Code only applies to cases where the nuisance is about to be erected. But we are unable to concur in this view. No such distinction was recognized in courts of equity before the adoption of the Code.

The courts of equity granted relief as readily and certainly, in a proper case, where the nuisance had been erected, as where it was about to be. If it had been intended to make the statute under consideration applicable to the latter class only, we think apt words would have been used to express such intent. Because, therefore, of the existence of the statute, continuing in force the equitable remedy, we think the Wisconsin case above cited is distinguishable.

IV. The slaughter-house was erected, and the grounds on which it is situated were used substantially as now, when some of the plaintiffs, at least, and perhaps all of them, purchased their property and erected their residences. We do not understand counsel for the appellants to claim that this fact makes any difference, except in so far as it affects the discretion usually, and possibly always, reposed in a court of equity, to grant or refuse an injunction, and remit the parties to their remedy at law for the recovery of damages.

4. ———: prior establishment of: use of adjacent land not prejudiced by.

Possibly, if nothing else was involved but damages to property, the point made would be well taken. But when, as in this case, health is injuriously affected and personal discomfort incurred because of offensive odors, adequate compensation in damages cannot be obtained. In such a case, if this action had been at law, the only adequate remedy that could have been granted would have been the abatement of the nuisance. As equity has concurrent jurisdiction with law, we do not think the sound discretion vested in the former should be so exercised as to deny any and all relief, and remit the plaintiffs to the remedy at law for the recovery of inadequate dam-

ages and the abatement of the nuisance. The plaintiffs do not ask the former, and the latter may be administered in and by either jurisdiction. Besides this, one person "cannot erect a nuisance upon his land adjoining vacant lands owned by another, and thus measurably control the use to which his neighbor's land may in the future be subjected." *Campbell v. Seaman*, 63 New York, 568; *Ashbrook v. Commonwealth*, 1 Bush, 139.

In this last case, pens in which were kept large numbers of cattle, horses and hogs were declared to be a nuisance, although they had been erected and so used for thirty years, and, when erected, were outside of the limits of the city of Covington, but by reason of the increase of population the pens became a nuisance. See also *McKeon v. See*, 51 N. Y., 300; *Brady v. Weeks*, 3 Barb., 157.

There is no allegation in the petition that plaintiffs own the property in which they live, nor is the location, character or value thereof stated. Because of this fact, the defendants objected to the admission of any evidence tending to show ownership, or the character and extent of the plaintiffs' property, and, therefore, it is said that a separate and distinct interest has not been shown, if the evidence aforesaid was inadmissible.

5. PRACTICE: petition not sufficiently specific: effect on evidence.

The petition was not attacked by either motion or demurrer, and we think it was too late to raise the objection when it was sought to introduce the evidence. The petition on its face stated a cause of action, because it did not appear therefrom that the interest of the plaintiffs was separate and distinct. From the petition it cannot be ascertained whether the plaintiffs owned the property jointly or severally. So far, therefore, as the injury to property was concerned, the petition stated a cause of action. Of course, the injury to health and personal comfort was separate and distinct. But the objection urged only relates to the property, and we think a motion for a more specific statement was the only remedy the defendants had. This, for sufficient reasons, no doubt, they

did not see proper to make. We have not considered the evidence of Hans Enfeldt, and therefore it is unnecessary to determine whether the objection made to its admission is well taken or not.

V. As to the plaintiffs' appeal, as has been stated, two paragraphs of the petition were stricken out on motion, and in this, it is said, the court erred. Conceding this, we think the plaintiffs have not been prejudiced by the ruling of the court.

VI. The decree enjoins the defendants from continuing the nuisance on the premises, or in the immediate vicinity thereof, *"in any such way or manner as to cause the repetition or continuance of said nuisance."* The plaintiffs insist that the italicized words should be stricken out of the decree. If this is done, the slaughtering of cattle, hogs and sheep cannot be carried on on said premises. The argument in favor of thus changing the effect of the decree is that, as it now stands, nothing is settled; that the question is certain hereafter to arise whether the business as conducted in the future constitutes a nuisance, although a few slight changes are made; and that further litigation is inevitable, unless the plaintiffs submit to the continuance of that which we hold to be a nuisance. There is much force in this argument; for we think it should be presumed that a suitable place, possibly not so convenient, could be found, where the business could be conducted without being a nuisance. It is a well known fact that slaughterhouses are in existence in or near cities, which are not regarded as nuisances. The city of Davenport, situate as it is on the banks of the Mississippi, cannot constitute an exception. If the italicized words were stricken out, the defendants could not conduct said business on the premises. If this can be avoided with due regard to the rights of others, we think it should be done. The circuit court, we infer, thought that it could. We are impressed with the belief that the case was not tried on any such theory. The defendants de-

*Marginal note:* 6. NUISANCE: abatement in equity: conditional or unconditional decree: practice.

nied the existence of the nuisance, and no evidence was introduced upon the question whether the business could be so conducted that it would not be a nuisance, if changes were made.

We are disposed to think the defendants should have the opportunity of so showing, if they can, and see proper to do so. But the plaintiffs should not be required to resort to another action to obtain rights to which we hold they are justly entitled. We think the desired end can be best accomplished by remanding the cause to the circuit court, with directions to permit the defendants, within such reasonable time as the court may direct, to introduce further evidence upon the question as to whether the manner of conducting said business can be so changed as to prevent the same from being a nuisance; the plaintiffs to have the opportunity of offering evidence in rebuttal of that introduced by the defendants. If the defendants decline to introduce any additional evidence, or if they do so, and the court is unable therefrom to determine that the said business can be so conducted as not to be a nuisance, then the court is directed to enter a decree unconditionally enjoining its continuance; but if the court should find otherwise, then a decree should be entered defining and protecting the rights of the parties. On defendants' appeal the decree is affirmed, and on plaintiffs' appeal

MODIFIED AND AFFIRMED.