ENSIGN v. WALLS.

1. NUISANCE—ABATEMENT—WEIGHT OF EVIDENCE.

In suit to abate a nuisance arising from the raising, breeding and boarding of dogs, it was for the trial judge to weigh the conflicting testimony and determine the actual facts and in so doing he may be aided by his own observation of the premises and the manner in which the business was conducted.

2. APPEAL AND ERROR—CHANCERY CASE—SUPREME COURT.

In reviewing a chancery case the Supreme Court is limited to a perusal of the record and, therefore, should not reverse or modify the decree entered unless persuaded it is not in accordance with the just rights of the parties.

3. NUISANCE—DOGS—EVIDENCE.

Finding of trial judge that defendant's business of raising, breeding and boarding of dogs constituted a nuisance as to the plaintiffs *held,* supported by the proofs.

4. ADVERSE POSSESSION—NUISANCE.

The right to continue a use of the property of another may be acquired by exercising such use adversely for a period equal to the statutory requirement for acquiring property or property rights by adverse possession, even though the use during the prescriptive period is of such character as to constitute a nuisance (3 Comp. Laws 1929, § 13964).

REFERENCES FOR POINTS IN HEADNOTES

[1, 3] 39 Am. Jur., Nuisances, § 65.
[1, 3] Dogs as nuisances.  79 A.L.R. 1060.
[2] 3 Am. Jur., Appeal and Error, § 912.
[4, 5, 7] 39 Am. Jur., Nuisances, § 202.
[5] 17 Am. Jur., Easements, §§ 55 *et seq.,* 72.
[6] 17 Am. Jur., Easements, § 55 *et seq.*
[9] 39 Am. Jur., Nuisances, § 153.
[10] "Coming to a nuisance" as a defense or operating as an estoppel.  167 A.L.R. 1364.

5. NUISANCE—PRESCRIPTIVE RIGHTS—BURDEN OF PROOF.

    One claiming a prescriptive right to maintain a nuisance has the burden of establishing that during a period of 15 years prior to the bringing of suit to abate the nuisance that the activity was conducted in the same manner and with the same results, insofar as the rights of other residents and property owners in the neighborhood were concerned, as at the time of the trial (3 Comp. Laws 1929, § 13964).

6. EASEMENTS—PRESCRIPTIVE RIGHTS—EVIDENCE.

    In order to establish a prescriptive easement, it must be shown that the user, during the entire period by which the right is fixed, has produced an injury of the same grade and character as that complained of (3 Comp. Laws 1929, § 13964).

7. NUISANCE—PUBLIC NUISANCE—PRESCRIPTIVE RIGHTS—PRIVATE INJURY.

    Since the right to maintain a public nuisance cannot be acquired by prescription, where a public nuisance works actionable private injury, a prescriptive right cannot be urged against a private action for such injury.

8. SAME—PRESCRIPTIVE RIGHTS—EVIDENCE.

    In suit to abate an alleged nuisance in the raising, breeding and boarding of dogs wherein defendant claimed that no nuisance, injurious to neighbors existed at any time during the course of her operations, such proofs did not establish a prescriptive right to conduct such operations found to be a nuisance.

9. SAME—INJUNCTION—CONTINUANCE OF ESTABLISHED BUSINESS—COMMENCEMENT OF BUSINESS IN RESIDENTIAL NEIGHBORHOOD.

    Courts of equity are more reluctant to restrain the continued operation of a lawful business than the commencement in a residential district of a business of such character that it will constitute a nuisance.

10. SAME—INTERFERENCE WITH USE OF NEIGHBORING LAND.

    One cannot place upon his land anything which the law would pronounce a nuisance, and thus compel his neighbor to leave his land vacant, or to use it in such a way only as the neighboring nuisance will allow.

11. SAME—INJUNCTION—EVIDENCE—DOGS—RESIDENCES.

    Where plaintiffs in suit to abate a nuisance, alleged to have been created by the raising, breeding and boarding of dogs, established residences near the business sought to be enjoined, such fact will be considered in determining whether or not to grant equitable relief, but it is not controlling.

12. SAME—INJUNCTION—FUTURE INCREASE OF INJURY.

 Where it may be assumed that injurious results of nuisance aris-
 ing from raising, breeding and boarding of dogs by defendant
 will be greater in the future than in the past, if the nuisance
 is not abated, such fact may be considered in determining
 whether or not to grant relief by way of abatement.

13. SAME—INJUNCTION—DOGS—REMOVAL OF OBJECTIONABLE FEA-
 TURES.

 Where no specific suggestions are offered as to manner in which
 business existing from raising, breeding and boarding of dogs
 might be conducted so as not to constitute a nuisance by re-
 moval of offensive features, the continuance of the nuisance
 was properly enjoined.

Appeal from Wayne; Murphy (Thomas J.), J.
Submitted October 6, 1948. (Docket No. 27, Calen-
dar No. 44,026.) Decided November 12, 1948.

Bill by Arthur H. Ensign, Jr., and others against
Jackie Wall to restrain a nuisance. Decree for
plaintiffs. Defendant appeals. Affirmed.

*Frank Day Smith,* for plaintiff.

*Wm. Henry Gallagher* (*Abraham Satovsky,* of
counsel), for defendant.

CARR, J. Defendant herein has for some years
past carried on at 13949 Dacosta street, in the city
of Detroit, the business of raising, breeding and
boarding St. Bernard dogs. Plaintiffs are property
owners and residents in the immediate neighbor-
hood. Claiming that the business conducted by de-
fendant constituted a nuisance as to them and their
property, plaintiffs brought suit for injunctive re-
lief. The bill of complaint alleged that obnoxious
odors came from defendant's premises at all times,
that the continual barking of the dogs interfered
with and disturbed plaintiffs in the use and enjoy-

ment of their respective properties, that the premises were infested with rats and flies, and that on occasions dogs escaped from defendant's premises and roamed about the neighborhood. Defendant in her answer denied that her business was conducted in such a manner as to constitute a nuisance, and claimed further that she had carried on the business at the premises in question since 1926, that she had invested a considerable sum of money in the purchase of the property and in the subsequent erection of buildings thereon, and that under the circumstances plaintiffs were not entitled to the relief sought.

On the trial of the case testimony was offered on behalf of the parties tending to substantiate their respective claims as set forth in the pleadings. Plaintiffs' witnesses testified to conditions of such character as to clearly constitute a nuisance. On the other hand, defendant and her witnesses claimed that the business was well conducted and was not so obnoxious in character as to interfere with plaintiffs or other residents in the neighborhood in the use and enjoyment of their homes. The trial judge inspected the premises of the defendant, and it appears from the record that his observations confirmed, in many respects at least, the proofs offered by plaintiffs with reference to the existing conditions. Decree was entered enjoining the carrying on of the business at the location in question after the expiration of 90 days from the entry of the decree, and requiring defendant to abate, within the period of time stated, the nuisance found to exist.

Defendant has appealed, claiming that the record made before the trial court was not of such character as to support the finding that the business carried on by her was in fact a nuisance. As before stated, the testimony of the witnesses for the plaintiffs was not in accord with that given by the de-

fendant and by others in her behalf. It was therefore for the trial court to weigh the conflicting testimony and to determine the actual facts. In so doing he was aided by his own observations of the premises and the manner in which the business was conducted. In *Northwest Home Owners Ass'n* v. *City of Detroit,* 298 Mich. 622, 643, it was said:

"We are appreciative of the fact that the trial court is in a much better position to pass upon the credibility of the witnesses than is the appellate court, by reason of the opportunity as well as the advantage of seeing and hearing the witnesses during their examination, direct and cross. The appellate court is limited to a perusal of the record. We should not, therefore, reverse or modify the decree entered herein unless we are persuaded that it is not in accordance with the just rights of the parties. *Langdell* v. *Langdell,* 285 Mich. 268; *Moore* v. *Moore,* 231 Mich. 209."

The principle stated in the language above quoted may well be applied in the case at bar. It is apparent from the record that the facts were gone into fully and carefully by the trial judge. The finding as to the facts was clearly supported by proofs and justified the conclusion that defendant's business constituted a nuisance as to the plaintiffs. See *Kobielski* v. *Belle Isle East Side Creamery Co.,* 222 Mich. 656 (31 A. L. R. 183); *Muskegon Trust Co.* v. *Bousma,* 247 Mich. 98; *Smith* v. *Nickoloff,* 283 Mich. 188; *Rohan* v. *Detroit Racing Association,* 314 Mich. 326 (166 A. L. R. 1246).

Defendant further insists that she has acquired a prescriptive right to continue her business at its present location because she operated it without interference from plaintiffs or their predecessors in title for a period of more than 15 years prior to the bringing of the present suit. Attention is called to

the decision of this Court in *Felton* v. *Wedthoff,* 185 Mich. 72, where it was said:

"Under the authorities there is not the slightest doubt that a private nuisance may be legalized by prescription. See, also, 29 Cyc. p. 1206 *et seq.,* and the numerous cases there cited."

While the language quoted is broad, it should be noted that the case involved a claim of easement created by user for approximately 45 years. In commenting on this situation it was said:

"The rule contended for by appellants would destroy the existence of everything in the nature of a prescriptive easement. This Court has in many cases sustained the validity of prescriptive easements."

Whether the court intended to declare that any private nuisance may be legalized by prescription is open to question, in view of the nature of the controversy. It has been repeatedly held that the right to continue a use of the property of another may be acquired by exercising such use adversely for a period equal to the statutory requirement for acquiring property or property rights by adverse possession,[*] even though the use during the prescriptive period is of such character as to constitute a nuisance. In the case at bar, however, defendant has not used, in any tangible way at least, the lots surrounding her property in the neighborhood. The situation here is somewhat analogous to that involved in *Northwest Home Owners Ass'n* v. *City of Detroit, supra,* p. 646, where it was said:

"Neither do we wish to be understood as holding that the right to maintain a nuisance can be gained by prescription."

---

[*] See 3 Comp. Laws 1929, § 13964 (Stat. Ann. § 27.593).—Reporter.

The conclusion may not be avoided that whether the right to continue a nuisance of the character here involved may be acquired by prescriptive user has not been definitely settled in this State; nor is it necessary that the matter be determined in the case at bar. Assuming that such right may be acquired in a case of this nature, it was incumbent on defendant to establish that during a period of 15 years prior to the bringing of the present action her business was conducted in the same manner and with the same results, insofar as the rights of other residents and property owners in the neighborhood were concerned, as at the time of the trial. The rule is stated in 46 C. J. p. 752, as follows:

"It must be shown that the user, during the entire period by which the right is fixed, has produced an injury of the same grade and character as that complained of."

In *Matthews* v. *Stillwater Gas & Electric Light Co.,* 63 Minn. 493 (65 N. W. 947), it was said:

"It being the settled law that the right to maintain a public nuisance cannot be acquired by prescription; also, that, where a public nuisance works actionable private injury, a prescriptive right cannot be urged against a private action for such injury,—the plaintiff argues that the acts of the defendant constituted a public nuisance, as well as a private one as to plaintiff, who thereby sustained special injury. It is not necessary to consider this question, because, for reasons hereafter stated, it is clear that defendant failed to establish any defense on the ground of a prescriptive right.

"There is apparently some confusion in the authorities upon the question whether a prescriptive right can be acquired to maintain a private nuisance of the kind existing in this case; that is, where there is no actual invasion of the land of another, but where the nuisance consists exclusively of corrupting the atmosphere with noxious smells, smoke, and

the like, which are injurious to health or property or both. Neither is it necessary to decide this question. It is fully discussed in 2 Wood, Nuisances (3d Ed.), chap. 20. It would seem that the general current of the authorities is to the effect that a prescriptive right to maintain such a nuisance may be acquired. But, if so, the rule is more theoretical than practical, because of the inherent difficulties in establishing such a right by proof. All the authorities, however, agree that the burden of proving such a right is upon him who asserts it; also, that the right is restricted to and measured by the user. Therefore, to constitute an adverse user requisite to sustain the right, it must be shown that the user, during the entire statutory period, has produced an injury equal to and of the character complained of. Otherwise expressed, the injury complained of, in order to be barred by a prescriptive right, must have been continued in substantially the same way, and with equally injurious results, for the entire statutory period. *Crosby* v. *Bessey,* 49 Me. 539 (77 Am. Dec. 271); *Postlethwaite* v. *Payne,* 8 Ind. 104; *Goldsmid* v. *Tunsbridge Wells Improvement Commrs.,* L. R. 1 Ch. App. 349 (35 L. J. Ch. [N. S.] 382); 2 Wood, Nuisances (3d Ed), § 713, and cases cited."

The discussion of the subject in 2 Wood on Nuisances (3d Ed.), § 708, is of like import. It was there said:

"There is a distinction between a prescriptive right to do some act upon one's own premises that operates injuriously to another, and a right to do some act upon another's premises. In the latter case, each act of user, before the user ripens into a right, is a trespass, for which an action may be maintained at any time, while in the former no action can be maintained until some right has been invaded. In the one case there is an actual invasion of the property itself, while in the other there is a mere invasion of some right. Therefore it will be seen, that while in the one case proof of the adverse user for the requisite period may be comparatively easy,

in the other it is always attended with great difficulty, and in some instances might be actually incapable of proof.

"The rule is, and it is important to be remembered, in view of the doctrines that will be announced hereafter, that to constitute an adverse user requisite to sustain the right, it must be shown that the user had actually invaded the rights of the person against whom the claim is made, in reference to the particular matter which is the subject of complaint, and that the user, during the entire statutory period, and the invasion of the right, has produced an injury equal to, and of the character complained of, and of such a character and to such an extent that at any time during that period an action might have been maintained therefor."

The subject is also discussed and illustrative cases cited in an annotation in 152 A. L. R. 352.

An examination of the record in the instant case establishes that defendant did not show that during the entire period during which she claims the prescriptive right was acquired her business was carried on in the same manner, to the same extent, and with the same results insofar as the resulting injuries to others were concerned, as at the time of trial. Even if a right to maintain a nuisance of the character herein involved may be acquired by prescriptive user, defendant failed to sustain the burden resting on her. On the contrary, defendant contended that no nuisance, injurious to the plaintiffs or their predecessors in title, existed at any time during the course of her operations. Plaintiffs' proofs, which the trial court accepted as the basis of the decree entered, did not supply the omission. Under any aspect of the situation, defendant's claim that she has acquired by prescriptive user the right to continue the nuisance found by the trial judge to exist cannot be sustained.

The record discloses that the plaintiffs, or the majority of them at least, have moved into the neighborhood in recent years. In view of this situation it is claimed by defendant that, inasmuch as she was carrying on her business of raising, breeding and boarding dogs on her premises at the time plaintiffs established their residences in the neighborhood, they cannot now be heard to complain. Such circumstance may properly be taken into account in a proceeding of this nature in determining whether the relief sought ought, in equity and good conscience, to be granted. Doubtless under such circumstances courts of equity are more reluctant to restrain the continued operation of a lawful business than in instances where it is sought to begin in a residential district a business of such character that it will constitute a nuisance. The supreme court of Pennsylvania in *Wier's Appeal,* 74 Pa. 230, declared the commonly accepted rule as follows:

"There is a very marked distinction to be observed in reason and equity between the case of a business long established in a particular locality, which has become a nuisance from the growth of population and the erection of dwellings in proximity to it, and that of a new erection threatened in such a vicinity. Carrying on an offensive trade for any number of years in a place remote from buildings and public roads, does not entitle the owner to continue it in the same place after houses have been built and roads laid out in the neighborhood, to the occupants of which and travellers upon which it is a nuisance. As the city extends, such nuisances should be removed to the vacant grounds beyond the immediate neighborhood of the residences of the citizens. This, public policy, as well as the health and comfort of the population of the city, demand: 7 P. F. Smith, 275.* It certainly ought to

---

* *Rhodes* v. *Dunbar,* 57 Pa. 274.—REPORTER.

be a much clearer case, however, to justify a court of equity in stretching forth the strong arm of injunction to compel a man to remove an establishment in which he has invested his capital and been carrying on business for a long period of time, from that of one who comes into a neighborhood proposing to establish such a business for the first time, and who is met at the threshold of his enterprise by a remonstrance and notice that if he persists in his purpose, application will be made to a court of equity to prevent him."

In *People* v. *Detroit White Lead Works,* 82 Mich. 471 (9 L. R. A. 722), defendants were prosecuted for violation of an ordinance prohibiting the creation or maintenance of nuisances. There the property adjacent to defendant's establishment had become a residential neighborhood after the operation of the business was begun. While this was a criminal case rather than a suit in equity to abate a nuisance, the language of the Court is significant. It was said in part, p. 477:

"The city of Detroit has extended to the defendants' works, and the owners of adjoining lands have erected dwellings thereon. This they, of course, had the legal right to do. The defendants cannot be protected in the enjoyment of their property, and the carrying on of their business, if it becomes a nuisance to people living upon the adjoining properties, and to those doing legitimate business with them. Whenever such a business becomes a nuisance, it must give way to the rights of the public, and the owners thereof must either devise some means to avoid the nuisance, or must remove or cease the business. It may not be continued to the injury of the health of those living in its vicinity. This rule is founded both upon reason and authority. Nor is it of any consequence that the business is useful or necessary, or that it contributes to the wealth and prosperity of the community."

The Court quoted with approval from the earlier case of *Robinson* v. *Baugh,* 31 Mich. 290, 296, as follows:

"However lawful the business may be in itself, and however suitable in the abstract the location may be, they cannot avail to authorize the conductor of the business to continue it in a way which directly, palpably and substantially damages the property of others; unless, indeed, the operator is able to plant himself on some peculiar ground of grant, covenant, license or privilege, which ought to avail against complainants, or on some prescriptive right, and which in this country can rarely happen."

In *Rohan* v. *Detroit Racing Ass'n, supra,* plaintiffs sought injunctive relief to abate an alleged nuisance. Defendants insisted that the relief should be denied because plaintiffs had moved into the neighborhood after the operation of the race track, of which plaintiffs complained, had begun. Commenting on this claim, it was said, p. 360:

"Defendants argue that, as plaintiffs established their residence in close proximity to the State fair grounds and have acquiesced in the operation of the race track for many years without complaint, they are not now entitled to equitable relief. However, we cannot agree with this contention, as the record indicates that during the several years preceding the present suit plaintiffs were subjected to increasing annoyance, unpleasantness, and nuisance through the operation of the race track and barns and the conduct of persons employed about the track. The testimony is uncontradicted that plaintiffs were subjected to flies and insects attracted by the horse stables; that they were annoyed by the odor of manure permitted to accumulate near the horse barns; that they were subjected to loud noises and profane language; that the operation of the horse barns and the conduct of employees created a continuous fire hazard; and that patrons of the

race track parked their automobiles so as to interfere with traffic in the street and to block plaintiffs' driveway. While a race track is not a nuisance *per se,* the record is convincing that the track and barns have been operated in such a manner as to subject plaintiffs to a common or private nuisance which should be abated."

In *Campbell* v. *Seaman,* 63 N. Y. 568 (20 Am. Rep. 567), the court enjoined the operation of a brick manufacturing plant on the ground that it was a nuisance. The plant was established a number of years previously, before neighboring residences were constructed. In rejecting the claim that equitable relief should be denied because of such circumstance, it was said:

"One cannot erect a nuisance upon his land adjoining vacant lands owned by another and thus measurably control the uses to which his neighbor's land may in the future be subjected. He may make a reasonable and lawful use of his land and thus cause his neighbor some inconvenience, and probably some damage which the law would regard as *damnum absque injuria.* But he cannot place upon his land anything which the law would pronounce a nuisance, and thus compel his neighbor to leave his land vacant, or to use it in such way only as the neighboring nuisance will allow."

In *Bushnell* v. *Robeson & Co.,* 62 Iowa, 540 (17 N.W. 888), the court reached a similar conclusion. In granting relief against the operation of a slaughterhouse, it was said:

"The slaughterhouse was erected, and the grounds on which it is situated were used substantially as now, when some of the plaintiffs, at least, and perhaps all of them, purchased their property and erected their residences. We do not understand counsel for the appellants to claim that this fact makes any difference, except in so far as it

affects the discretion usually, and possibly always, reposed in a court of equity, to grant or refuse an injunction, and remit the parties to their remedy at law for the recovery of damages.

"Possibly, if nothing else was involved but damages to property, the point made would be well taken. But when, as in this case, health is injuriously affected and personal discomfort incurred because of offensive odors, adequate compensation in damages cannot be obtained. In such a case, if this action had been at law, the only adequate remedy that could have been granted would have been the abatement of the nuisance. As equity has concurrent jurisdiction with law, we do not think the sound discretion vested in the former should be so exercised as to deny any and all relief, and remit the plaintiffs to the remedy at law for the recovery of inadequate damages and the abatement of the nuisance. The plaintiffs do not ask the former, and the latter may be administered in and by either jurisdiction."

Defendant cites and relies on prior decisions of this Court in each of which consideration was given to the circumstance that the parties seeking relief had established residences near the business the operation of which was sought to be enjoined. That such a circumstance may properly be considered in any case of this character in determining whether equitable relief should be granted is scarcely open to question. However it is not necessarily controlling. Looking to all the facts and circumstances involved, the question invariably presented is whether the discretion of the court should be exercised in favor of the parties seeking relief. In the case at bar the trial court came to the conclusion that the nuisance found by him to exist ought to be abated, and that such action was necessary in order to protect the plaintiffs in their rights and in the use and enjoyment of their homes. It may be as-

sumed that new residences will be built in the community in the future, as they have been in the past, and that in consequence the community will become more and more thickly populated. This means of course that the injurious results of the carrying on of defendant's business, if the nuisance is not abated, will be greater in the future than it has been in the past. Such was obviously the view of the trial judge, and we cannot say that he abused his discretion in granting relief. On the contrary we think his conclusions were fully justified by the record.

Defendant also argues that the further carrying on of the business should not have been enjoined. but rather that the court should have regulated its future operation in such manner as to "eliminate claimed objections." No specific suggestions are offered, however, as to the manner in which the result suggested can be accomplished. In view of the nature of the business it seems apparent, if defendant is permitted to continue it on her premises, the same conditions will necessarily attend its carrying on as the trial judge found existed at the time of the hearing before him. The record does not indicate that any suggestion was made during the course of the trial that the offensive features of the business could be avoided by any reasonable means. Rather, defendant insisted that plaintiffs' rights were not invaded by her acts, that no nuisance existed, and that plaintiffs were not entitled to the relief sought.

A similar question was raised in *Mitchell* v. *Hines,* 305 Mich. 296, where the operation of a piggery was enjoined. In rejecting defendant's claim as to the character of the relief to be granted, it was said:

"The court of equity is reluctant to bar the operation of a lawful business and will not do so if a remedy may be applied to the nuisance incidental thereto. However, tests do not show any satisfactory means of carrying on a large-scale garbage-feeding piggery. *Trowbridge* v. *City of Lansing,* 237 Mich. 402 (50 A. L. R. 1014). No method of feeding garbage to pigs on a commercial scale, as is here the case, in a manner that will not constitute a nuisance has been disclosed by the proof."

The decree of the circuit court is affirmed. Plaintiffs may have costs.

Bushnell, C. J., and Sharpe, Boyles, Reid, North, Dethmers, and Butzel, JJ., concurred.